UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL RAY MIX,

        Petitioner,

v.                              CASE NO. 16-cv-10909
                                   HONORABLE SEAN F. COX

DUNCAN MacCLAREN,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE AMENDED PETITION, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL *IN FORMA PAUPERIS*

Petitioner Daniel Ray Mix, a state prisoner in the custody of the Michigan Department of Corrections, seeks a writ of habeas corpus under 28 U.S.C. § 2254. The petition challenges Petitioner's state convictions for: three counts of criminal sexual conduct (CSC) in the first degree, Mich. Comp. Laws § 750.520b(1)(a) (sexual penetration of a person under the age of thirteen); two counts of CSC in the second degree, Mich. Comp. Laws § 750.520c(1)(a) (sexual contact with a person under the age of thirteen); and one count of assault with intent to commit CSC involving sexual penetration, Mich. Comp. Laws § 750.520g(1).  He raises multiple issues about the pretrial proceedings, the state trial court, his former attorneys, and his sentence.

Respondent Duncan MacLaren filed a responsive pleading in which he addresses the six claims that Petitioner raised in his initial petition. He concedes that Petitioner has exhausted state remedies for those claims, that the statute of limitations does not bar review of the claims, and that the non-retroactivity doctrine does not apply. However, he contends that Petitioner procedurally defaulted his fifth and sixth claims, and he asks the Court to deny the petition. *See* Answer Opposing Pet. for Writ of Habeas Corpus (ECF No. 16, PageID.355-359). Petitioner filed a reply to Respondent's answer, *see* Petitioner's Objections to Respondent's Answer to Writ of Habeas Corpus (ECF No. 18), and supplemental documents (ECF Nos. 19-22).

The Court construes the amended habeas petition as raising more claims than what Respondent has addressed. The Court, nevertheless, agrees with Respondent that Petitioner is not entitled to the writ of habeas corpus. Accordingly, the Court will deny the amended petition and dismiss the case.

## I. Background

## A. The Charges, Trial, and Sentence

The charges against Petitioner arose from allegations that Petitioner sexually penetrated the complainant ("SJ") or touched her in a sexual manner, beginning in 2006, when SJ was six years old, and continuing until May 2011, when she first

disclosed the abuse to a friend.  During those years, Petitioner was living with SJ, her mother, and her younger sister.

SJ was twelve years old in January 2013 when she testified at Petitioner's trial in Jackson County Circuit Court.  She described Petitioner's vaginal and anal penetration of her and sexual contact with her private parts at times when her mother was not around or was sleeping.  Petitioner would tell her that was their little secret. After she disclosed the abuse to someone at school, Petitioner asked whether she had said anything, and he told her that if she had said something, he would spank her. She lied and told him that she did not say anything, because she had seen him spank her little sister and make her sister cry.  Shortly after her birth father died, her mother wanted to take her to counseling, but Petitioner did not want her to go.  Afterward, she thought that his reluctance to have her go to counseling was because he feared that she would tell the counselor what he had been doing to her.  She thought that Petitioner did something inappropriate to her about once a month.

Petitioner's adult half-sisters, "HM" and "ST," "testified as other acts witnesses.  HM and ST both testified that [Petitioner] inappropriately touched them at a young age and thereafter progressed to sexual acts involving penetration." *People v. Mix*, No. 315355, 2014 WL 3512960, at *1 (Mich. Ct. App. July 15, 2014). There was additional testimony from SJ's mother, a former Child Protective Service worker who interviewed SJ after she disclosed the abuse to her friend, the police

officer who subsequently interviewed Petitioner, the pediatrician who examined SJ after the disclosure, and an expert witness in child sexual abuse dynamics and disclosure.

Petitioner did not testify or present any defense witnesses. His defense was that he did not commit the crimes, that the allegations arose from a story that the complainant told her friend, that he was being tried on allegations that HM and ST made about him years earlier,[1] and that the prosecutor had not proved its case beyond a reasonable doubt.

On January 31, 2013, the jury found Petitioner guilty, as charged, of three counts of first-degree CSC, two counts of second-degree CSC, and one count of assault with intent to commit sexual penetration. On March 14, 2013, the trial court sentenced Petitioner to concurrent terms of 29½ to 50 years in prison for the first-degree CSC convictions, 14 to 22½ years in prison for the second-degree CSC convictions, and 10 to 15 years in prison for the assault conviction.

---

[1]   The allegations that HM and ST made about Petitioner resulted in criminal charges being brought against Petitioner, but the jurors at his trial in that case were unable to reach a verdict. HM and ST testified at Petitioner's 2013 trial involving SJ that, even though they knew at the time of the mistrial in their case that Petitioner could be tried a second time, they chose not to proceed with a second trial because they did not want to go through another trial.

## B.  The Direct Appeal

Petitioner appealed his convictions through counsel on grounds that:  (1) his trial attorney provided constitutionally ineffective assistance by failing to (a) challenge the testimony of HM and ST, (b) challenge the expert witness's testimony, (c) object to the use of a support person for the complainant, (d) object to the use of a witness screen for the complainant, and (e) engage in meaningful cross-examination of the complainant; (2) the trial court violated his constitutional and statutory rights to a face-to-face confrontation and to the presumption of innocence by permitting the complainant to testify behind a two-way screen, aided by a support person; and (3) the trial court violated his right to due process by incorrectly scoring offense variables 3, 10, and 19 of the Michigan sentencing guidelines.   *See* Defendant-Appellant's Brief on Appeal (ECF No. 17-15, PageID.1068-1070).

In a *pro se* supplemental brief, Petitioner argued that trial counsel provided constitutionally ineffective assistance by failing to (a) challenge certain jurors for cause, (b) object to the trial court's closure of the courtroom, and (c) produce key defense witnesses at trial.   *See* Defendant's Standard 4 Brief (ECF No. 17-15, PageID.1208-1209).   The Michigan Court of Appeals rejected all of Petitioner's claims and affirmed his convictions and sentences in an unpublished, *per curiam* decision.  *See Mix*, 2014 WL 3512960.

Petitioner raised the first three claims that he presented to the Michigan Court of Appeals in a *pro se* application for leave to appeal in the Michigan Supreme Court. *See* Pro Per Application for Leave to Appeal (ECF No. 17-16, PageID.1258-1298). In a motion to amend, Petitioner raised the fourth claim that he presented to the Court of Appeals.  (ECF No. 17-16, PageID.1300-1314).

In a second motion to amend, Petitioner raised two new claims, which alleged that his convictions and sentences were based on fraud and deception, and his Sixth Amendment rights were violated when the trial court remanded his case to the state district court for further testimony.  *See* Mot. to Amend (ECF No. 17-16, PageID.1529-1539).  On March 31, 2015, the Michigan Supreme Court granted the motions to amend, but denied leave to appeal because the court was not persuaded to review the questions presented to it.  *See People v. Mix*, 497 Mich. 982; 861 N.W.2d 28 (2015).

## C.  The Initial Habeas Petition and Stay

In 2016, Petitioner filed his initial habeas corpus petition, raising the six claims that he had presented to the Michigan Supreme Court on direct review.  *See* Pet. (ECF No. 1, PageID.1-24).  During the Court's preliminary review of the petition, the Court determined from allegations in the petition that Petitioner had not exhausted state remedies for his fifth and sixth habeas claims.  Accordingly, on

March 25, 2016, the Court ordered Petitioner to show cause why his habeas petition

should not be dismissed.  *See* Order to Show Cause (ECF No. 4).

Petitioner initially asked the Court to dismiss his case without prejudice, *see*

Mot. to Dismiss (ECF No. 7), but he subsequently asked the Court to hold his case

in abeyance while he pursued post-conviction remedies in state court.  *See* Mot. to

Hold Habeas Pet. in Abeyance (ECF No. 8). On July 11, 2016, the Court denied

Petitioner's motion to dismiss, granted the motion for a stay, and closed this case for

administrative purposes.  *See* Order Denying Petitioner's Mot. to Dismiss, Granting

Petitioner's Mot. to Hold the Habeas Pet. in Abeyance, and Closing Case (ECF No.

9, PageID.303-304).

## D.  State Collateral Review

Meanwhile, in mid-June 2016, Petitioner filed in the state trial court a notice

of intent to file a motion for relief from judgment.  The notice sought discovery,

appointment of counsel, an evidentiary hearing, and a stay of actual briefing.  The

notice also set forth nine claims that Petitioner intended to raise in a motion for relief

from judgment.  *See* Notice of Intent to File Mot. for Relief from J. (ECF No. 17-

17).

A few months later, on or about September 23, 2016, Petitioner filed a

document entitled "Amended Motion for Relief from Judgment."  (ECF No. 17-19.)

The motion repeated Petitioner's requests for discovery, appointment of counsel, an

evidentiary hearing, and a stay of the briefing schedule.  *See id*. at PageID.1589. The motion and attached brief added a tenth claim to Petitioner's list of grounds for relief, and Petitioner stated that, following discovery, he would file an amended motion for relief from judgment.  *See id*. at PageID.1592, 1609.

On October 5, 2016, the trial court denied Petitioner's requests for appointment of counsel, for an evidentiary hearing, and for documents and records. The court did not address the ten claims that Petitioner raised as grounds for relief from judgment.  *See People v. Mix*, No. 11-4297-FC, Order Following Mot. for Intent to File Mot. for Relief from J. (Jackson Cty. Cir. Ct. Oct. 5, 2016) (ECF No. 17-20).  Petitioner moved for reconsideration and, at the same time, applied for leave to appeal the trial court's decision on his previous motion.  *See* Mot. for Re-Consideration (ECF No. 17-21, PageID.1614-1616), and Notice of Appeal, *id*. at PageID.1617.

In his subsequent appellate brief, Petitioner raised two claims about his trial and appellate attorneys.  He claimed that: (1) trial counsel was ineffective for failing to (a) adequately investigate the case, (b) file a timely motion to quash the criminal information (charging document) that added charges, and (c) file an interlocutory appeal; and (2) appellate counsel was ineffective for failing to (a) adequately investigate the case, and (b) raise a claim about trial counsel's failure to timely file a motion to quash the criminal information.  *See* Defendant-Appellant's Application

for Leave to Appeal (ECF No. 17-23, PageID.1622-1650). In a motion to amend his appellate application, Petitioner raised the nine claims that he listed in his amended motion for relief from judgment, *see id*. at PageID.1677-1701, and in a motion for clarification, he stated that he wanted to add the tenth claim that he raised in his motion for relief from judgment, *see id*. at PageID.1702-04.

The Michigan Court of Appeals denied Petitioner's motions to amend his application and for clarification and dismissed the application for leave to appeal because the issues Petitioner raised did not arise from the order that he appealed. *See People v. Mix*, No. 337736 (Mich. Ct. App. June 13, 2017); (ECF No. 17-23, PageID.1621). Petitioner appealed that decision to the Michigan Supreme Court, which denied leave to appeal on May 29, 2018, because it was not persuaded to review the questions presented to the court. *See People v. Mix*, 501 Mich. 1080; 911 N.W.2d 711 (2018).

Meanwhile, the trial court entered an order that accepted Petitioner's amended brief for relief from judgment and denied his jurisdictional claim because there was no jurisdictional defect. As for Petitioner's other claims, the trial court stated that Petitioner had not shown "cause" for failing to raise those claims during his previous appeal or actual prejudice. *See People v. Mix*, No. 11-4297-FC, Order Following Pro Per Motions (Jackson Cty. Cir. Ct. July 12, 2017); (ECF No. 17-22). Petitioner appealed that order, but the Michigan Court of Appeals denied leave to appeal

because Petitioner failed to establish that the trial court erred in denying his motion for relief from judgment. *See People v. Mix*, No. 340763 (Mich. Ct. App. Mar. 30, 2018); (ECF No. 17-25, PageID.1910). The Michigan Supreme Court denied leave to appeal on May 29, 2018 because Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Mix*, 501 Mich. 1084; 911 N.W.2d 725 (2018).

## E. The Amended Habeas Petition and Responsive Pleading

On June 14, 2018, Petitioner filed an amended habeas corpus petition (ECF No. 11) and a motion to re-open his federal case (ECF No. 10). The amended petition incorporates the claims that Petitioner presented to the State's appellate courts on direct review and twelve other claims. *See* Amended Pet. (ECF No. 11, PageID.311-321). On September 19, 2018, the Court granted Petitioner's motion to re-open his case, directed the Clerk of Court to serve the initial and amended petitions on the State, and directed the State to file a response to the petitions. *See* 9/19/18 Order (ECF No. 13). The State subsequently filed an Answer Opposing the Petition for Writ of Habeas Corpus (ECF No. 16), and Petitioner filed a reply (ECF No. 18).

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court'

to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). The Supreme Court has explained that

> a state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."

*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000)) (alterations added).

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.,* at 413, 120 S.Ct. 1495. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id.,* at 410, 412, 120 S.Ct. 1495. The state court's application of clearly established law must be objectively unreasonable. *Id.,* at 409, 120 S.Ct. 1495.

*Id.* at 75.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt[.]' " *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal and end citations omitted). "A state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Therefore, "[o]nly an 'objectively unreasonable' mistake, . . . , one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir.) (quoting *Richter*, 562 U.S. at 103), *cert. denied*, 140 S. Ct. 445 (2019). "That's a 'high bar' to relief, which 'is intentionally difficult to meet.' " *Kendrick v. Parris,* 989 F.3d 459, 469 (6th Cir. 2021) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)), *pet. for cert. docketed*, No. 21-107 (U.S. July 27, 2021).

### III.  The Claims Raised in the Appeal of Right

### A.  Trial Counsel

Petitioner alleges that his trial attorney's omissions deprived him of his right to effective assistance of counsel.  The Michigan Court of Appeals rejected Petitioner's ineffective-assistance-of-counsel claims on direct appeal because defense counsel's performance was not deficient or because the deficient performance did not prejudice the defense.

The clearly established federal law for Petitioner's ineffectiveness claims is *Strickland v. Washington*, 466 U.S. 668 (1984).  *Cullen v. Pinholster*, 563 U.S. 170,

189 (2011).  In *Strickland,* the Supreme Court stated that "the proper standard for attorney performance is that of reasonably effective assistance."  *Strickland*, 466 U.S. at 687.  To establish that counsel's assistance was so defective as to require reversal of a conviction, a convicted person must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Id*.  Unless the convicted individual "makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  *Id*.

An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 688.  A defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  Because of the difficulties inherent in evaluating an attorney's performance,

> a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id*. (internal citation omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.   The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.   "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).   Moreover, "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so[.]" *Id.* at 105 (internal and end citations omitted).

### 1.  The "Other Acts" Evidence

Petitioner asserts that his trial attorney was ineffective for failing to object to the testimony of his half-sisters, HM and ST.   According to Petitioner, HM and ST's case was unlike SJ's case, and the testimony of HM and ST put him in the position of having to try their case against him all over again, even though their 1993 trial ended in a hung jury.   Petitioner also alleges that HM and ST's testimony lacked reliability, that any probative value of their testimony was outweighed by the danger of unfair prejudice or confusion of the issues, and that there was no need for their testimony because SJ gave ample testimony.   He concludes that the other acts testimony was introduced to unfairly prejudice the trial and mislead the jury.

The Michigan Court of Appeals adjudicated this claim on the merits during direct review and concluded that the "other acts" evidence was admissible under state law and, therefore, defense counsel was not ineffective for failing to object to the evidence.   In reaching this decision, the Court of Appeals pointed out the similarity between the prior acts and the charged crime and the reliability of HM and ST's testimony due to their previous testimony against Petitioner.   The Court of Appeals also pointed out that HM and ST lent credibility to SJ's testimony in a case where the main defense argument was that the abuse did not occur.

This Court is bound by the state court's interpretation of state law.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).   Furthermore, Petitioner's trial attorney was his third or fourth attorney, and the trial court informed the attorney at a pretrial hearing on January 18, 2013, and immediately before the trial began that the court had already ruled on the motion regarding prior acts.  *See* 1/18/13 Pretrial Tr. (ECF No. 17-8, PageID.561-562); 1/28/13 Trial Tr. (ECF No. 17-9, PageID.566).   Defense counsel could have concluded that it would be futile to object to the evidence, "and the failure to make futile objections does not constitute ineffective assistance[.]" *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016).  Similarly, "failing to make a futile motion is neither unreasonable nor prejudicial." *Jacobs v. Sherman*, 301 F. App'x 463, 470 (6th Cir. 2008) (citing *Strickland*, 466 U.S. at 687).

To his credit, defense counsel acknowledged in his opening statement that there would be "other acts" evidence and then pointed out that there was no conviction in the prior case. *See* 1/29/13 Trial Tr. (ECF No. 17-11, PageID.833-34). Defense counsel's performance was not deficient, and the state appellate court's ruling on the issue was objectively reasonable. Petitioner has no right to relief on his claim.

### 2. Cross-Examination of the Prosecution's Expert Witness

Petitioner claims that his trial attorney was ineffective for failing to adequately cross-examine Tom Cottrell, the prosecution's expert witness on child sexual abuse dynamics and disclosure. According to Petitioner, if defense counsel had subjected Cottrell to even garden-variety cross-examination, Cottrell would have had to admit that he could not say with any certainty that SJ was "groomed" or that any of the conduct Cottrell described occurred in the case against Petitioner. Petitioner also alleges that defense counsel made no effort to locate an expert who could have testified that young victims of sexual abuse might distort or fabricate facts due to coaching by other individuals.

The Michigan Court of Appeals rejected both of Petitioner's arguments. Regarding defense counsel's cross examination of the prosecution's expert witness, the Court of Appeals stated that defense counsel may have wanted to avoid further elaboration on the witness's testimony about grooming and how children often delay

reporting abuse.  As for defense counsel's failure to produce a defense expert, the Court of Appeals pointed out that: there was nothing in the record to indicate what an expert might have stated to rebut the prosecution's expert witness; defense counsel used some of the expert witness's testimony to show that the complainant was not credible; and even if the defense had produced an expert witness, the jury would have been entitled to believe the complainant's testimony.

This Court finds no merit in Petitioner's claims for the following additional reasons.  First, "[c]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."  *Millender v. Adams,* 187 F. Supp. 2d 852, 870 (E.D. Mich. 2002) (citing *Henderson v. Norris*, 118 F.3d 1283, 1287 (8th Cir. 1997)).  "*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' "  *Pinholster*, 563 U.S. at 196 (quoting *Strickland*, 466 U.S. at 689-90).

Similarly, a defense attorney's decision on what evidence to present and whether to call or question witnesses are matters of trial strategy.  *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (citing *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)).  "There are . . . 'countless ways to provide effective assistance in any given case' "  *Richter*, 562 U.S. at 106 (quoting *Strickland*, 466 U.S. at 689), and it is a rare case where "the 'wide latitude counsel must have in making tactical

decisions' will be limited to any one technique or approach." *Id.* (quoting *Strickland*, 466 U.S. at 689).

"[T]he failure to seek an expert does not satisfy the performance prong of *Strickland* where counsel chooses a strategy that does not require an expert." *Swaby v. New York*, 613 F. App'x 48, 50 (2d Cir. 2015) (quoted with approval in *Kendrick*, 989 F.3d at 474). "In many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Richter,* 562 U.S. at 111. "When defense counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict." *Id.*

Petitioner's trial attorney did not have a solid case, and even though his cross-examination of Cottrell was short, he established a few important points: (1) that allegations can be reinforced, (2) that Cottrell was speaking generally, and (3) there are always exceptions to the rule. *See* 1/30/13 Trial Tr. (ECF No. 17-12, PageID.996-997). Defense counsel's approach to the expert witness's testimony was not deficient, and his decision not to produce a defense expert was reasonable. He "was entitled to . . . balance limited resources in accord with effective trial tactics and strategies." *Richter*, 562 U.S. at 107. The state court's rejection of Petitioner's claim was objectively reasonable and Petitioner has no right to relief on his claim.

### 3.  The Use of a Support Person

Petitioner alleges that defense counsel was ineffective for failing to object to the use of SJ's former teacher as a support person during SJ's trial testimony. Petitioner asserts that reasonable trial strategy would have included an effort to determine whether the former teacher's presence was unfairly prejudicial because she was one of the adults who learned of the alleged abuse.

The record shows that the support person was a woman with whom SJ was living.  Apparently, the woman was a foster parent, not SJ's teacher.  *See* 1/29/13 Trial Tr. (ECF No. 17-10, PageID. 667).   Furthermore, the Michigan Court of Appeals correctly pointed out on review of Petitioner's claim that there is no indication in the record that the support person improperly influenced SJ.  Therefore, defense counsel was not ineffective for failing to object to the support person, and counsel's performance did not prejudice Petitioner.

### 4.  The Use of a Two-Way Witness Screen

Petitioner alleges that defense counsel should have objected to the use of the witness screen during SJ's testimony.[2]  The Michigan Court of Appeals agreed that it was objectively unreasonable to object because the trial court failed to make the

---

[2] For an example of such a screen, *see Rose v. Rapelje*, No. 1:12-CV-1344, 2016 WL 4394214, at *2 (W.D. Mich. Aug. 18, 2016) (unpublished).  "[T]he screen permits the accused to see the witness but does not permit the witness to see the accused." *Id.*

necessary findings regarding the use of a witness screen.  The Court of Appeals, nevertheless, concluded that Petitioner's claim lacked merit because there was not a reasonable probability that the result of the trial court would have been different without counsel's error.

The Supreme Court's "precedents establish that 'the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial,' a preference that 'must occasionally give way to considerations of public policy and the necessities of the case[,]' " *Maryland v. Craig*, 497 U.S. 836, 849 (1990) (emphasis in original, citations omitted).  The presence of "other elements of confrontation—oath, cross-examination, and observation of the witness' demeanor—adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony."  *Id*. at 851. Thus,

> where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit use of a procedure that, despite the absence of face-to-face confrontation, ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation.

*Id.* at 857.

Although Petitioner contends that the screen used at his trial suggested that SJ feared him, there was other evidence suggesting that she feared Petitioner.  As noted

above, she feared that Petitioner would spank her if he knew that she had disclosed the abuse. And the pediatrician who examined SJ testified that SJ was worried that Petitioner would come back and get her when she got older. *See* 1/30/13 Trial Tr. (ECF No. 17-12, PageID.896).

Furthermore, as the Michigan Court of Appeals pointed out, "the victim was physically present in the courtroom, testified under oath, and was subject to cross-examination, and the record suggests that the screen allowed the jury to see the victim. Further, there was other acts evidence to corroborate the victim's testimony, and her testimony was corroborated by physical evidence of her unusually thin hymen." *Mix*, 2014 WL 3512960, at *4.

For all these reasons, defense counsel's failure to object to the screen did not amount to deficient performance, and the alleged deficiency did not prejudice Petitioner. Petitioner is not entitled to relief on his claim.

### 5. Failure to Cross-Examine SJ in a Meaningful Way

Petitioner contends that defense counsel's cross examination of SJ demonstrated that he was, in effect, a second prosecutor because he asked SJ whether Petitioner had pulled down her pants and underwear, climbed under the bed covers, and put his "private" in her "butt." *See* 1/29/13 Trial Tr. (ECF No. 17-10, PageID.704-705). Petitioner argues that, instead of reinforcing the allegations through leading questions, defense counsel should have attempted to demonstrate

that SJ's allegations changed and became more severe as she went through different stages of counseling. The Michigan Court of Appeals rejected this claim because defense counsel thoroughly cross-examined the victim about the alleged acts and the time of the act and may have wanted to avoid elaboration on the victim's testimony and the appearance of bullying the victim.

This Court agrees with the state court's assessment of Petitioner's claim. Although at times, defense counsel did seem to reinforce SJ's allegations against Petitioner, a careful review of the cross-examination indicates that defense counsel was trying to discredit SJ's testimony without antagonizing the jury. Counsel elicited SJ's testimony that she was unsure of the dates when the abuse occurred or even whether the incidents occurred on a school day or on a weekend. Defense counsel also implied through his questioning that SJ had fabricated the allegations to get her friend Brooke in trouble and that SJ did not think the alleged abuse was a serious problem until after she was asked to talk to someone at school.

As previously explained, "[c]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Millender,* 187 F. Supp. 2d at 870. Here, given the sensitivity required when questioning a young complainant who complains of sexual abuse, defense counsel's performance was not deficient. Accordingly, the state court's rejection of

Petitioner' claim was reasonable, and Petitioner has no right to relief on his claim.

## B. Confrontation

The second habeas claim alleges that the trial court violated Petitioner's constitutional and statutory rights to a face-to-face confrontation and the presumption of innocence by allowing the complainant to testify through a two-way screen, aided by a support person.  Petitioner asserts that the trial court did not make any findings as to whether the screen was necessary to protect SJ, and the court could have considered other options.  Petitioner also asserts that the jury could have inferred that SJ needed protection from him and that she could not tolerate facing the person who abused her.

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error" because Petitioner did not present the issue to the trial court.  Respondent, therefore, argues that Petitioner procedurally defaulted his claim.

### 1. Procedural Default

In the habeas context, a procedural default is "a critical failure to comply with state procedural law."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).  Pursuant to the related doctrine, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  *Martinez v. Ryan*, 566 U.S. 1, 9 (2012).  In this Circuit, "[a] habeas petitioner procedurally defaults a claim when

'(1) [he] fails to comply with a state procedural rule; (2) the state courts enforce the rule; [and] (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim.' " *Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020) (quoting *Wheeler v. Simpson*, 852 F.3d 509, 514 (6th Cir. 2017) (quoting *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (*en banc*)), *petition for cert. docketed*, No. 20-8063 (U.S. May 18, 2021).

The relevant state procedural rule here is "the general and longstanding rule in Michigan that 'issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances.' " *People v. Cain*, 498 Mich. 108, 114; 869 N.W.2d 829, 832 (2015) (quoting *People v. Grant*, 445 Mich. 535, 546; 520 N.W.2d 123, 128 (1994)). "[R]equiring a contemporaneous objection provides the trial court 'an opportunity to correct the error, which could thereby obviate the necessity of further legal proceedings and would be by far the best time to address a defendant's constitutional and nonconstitutional rights.' " *People v. Carines*, 460 Mich. 750, 764–65; 597 N.W.2d 130, 139 (1999) (quoting *Grant*, 445 Mich. at 551; 520 N.W.2d at 130).

Petitioner violated this issue-preservation rule by not objecting at trial to the use of the two-way screen. As such, the first procedural-default factor is satisfied.

The second factor also is satisfied, because the Michigan Court of Appeals reviewed Petitioner's claim for "plain error," and a state court's plain-error review

is considered such an impediment to merits review as to be enforcement of a procedural rule. *Gibbs v. Huss*, __ F.4th __, __, No. 20-1973, 2021 WL 3855663, at *5 (6th Cir. Aug. 30, 2021) (citing *Williams v. Burt*, 949 F.3d 966, 973 (6th Cir.), *cert. denied*, 141 S. Ct. 276, 208 L.Ed.2d 38 (2020)); *accord Theriot*, 982 F.3d at 1004 (stating that "a state appellate court's review for plain error is enforcement of a procedural rule"); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("[W]e view a state appellate court's review for plain error as the enforcement of a procedural default.").

The third procedural default factor requires a determination of whether the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim. The Sixth Circuit Court of Appeals has determined that "Michigan's contemporaneous-objection rule 'constitutes an adequate and independent state ground for foreclosing federal review.' " *Theriot*, 982 F.3d at 1004 (citing *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011)). Thus, the third procedural-default factor is satisfied.

### 2. "Cause" for the Procedural Default

"A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show 'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.' " *Davila v. Davis*, 137 S. Ct. 2058, 2064-2065 (2017) (quoting

*Wainwright v. Sykes,* 433 U.S. 72, 84 (1977)).  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  A prisoner can establish an objective impediment to compliance with a procedural rule by showing (i) the factual or legal basis for a claim was not reasonably available, (ii) some interference by officials, or (iii) ineffective assistance of counsel.  *Id.*

Petitioner has not alleged "cause" for his procedural default, but as discussed above, he did raise an independent claim that trial counsel was ineffective for failing to object to the witness screen.   The Court has already determined that defense counsel's failure to object to the screen did not amount to deficient performance.

Even if counsel's performance was deficient, Petitioner has not shown that the deficient performance prejudiced the defense, because SJ testified under oath before the jury, and defense counsel was able to cross-examine her.  In addition, the other-acts evidence and the pediatrician's testimony corroborated SJ's testimony. Petitioner has not shown "cause" for his procedural default.

### 3.  Prejudice; Miscarriage of Justice

The Court need not determine whether the alleged constitutional error prejudiced Petitioner because he has not established "cause" for his failure to comply with state law.  *See Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000) (citing *Smith*

*v. Murray*, 477 U.S. 527, 533 (1986)).  In the absence of "cause and prejudice," a habeas petitioner may pursue procedurally defaulted claims if he can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

"A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' " *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Carrier*, 477 U.S. at 496).  "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner maintained his innocence throughout the state proceedings, but he has not presented the Court with any new and reliable evidence of actual innocence. Therefore, a fundamental miscarriage of justice will not result from this Court's failure to adjudicate the substantive merits of Petitioner's constitutional claim about the two-way screen used during SJ's testimony.  His second claim is procedurally defaulted.

## C.  The Sentencing Guidelines

The third habeas claim alleges that the trial court violated Petitioner's right to due process at sentencing by improperly scoring three offense variables of the

Michigan sentencing guidelines.  The Michigan Court of Appeals considered Petitioner's claim on direct review and concluded that the disputed offense variables were properly scored.

The contention that the sentencing guidelines were miscalculated lacks merit because a state court's application and interpretation of state sentencing guidelines is "a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  A sentence can violate due process of law if the trial court relied on extensively and materially false information that the defendant had no opportunity to correct through counsel.  *Townsend v. Burke*, 334 U.S. 736, 741 (1948).  But to obtain relief, Petitioner must show that his sentence was "founded at least in part upon misinformation of constitutional magnitude." *United States v. Tucker*, 404 U.S. 443, 447 (1972).

Petitioner contends that offense variable 3 was improperly scored at five points.  "Offense variable 3 is physical injury to a victim."  Mich. Comp. Laws § 777.33(1).  Five points is a proper score if "[b]odily injury not requiring medical treatment occurred to a victim."   Mich. Comp. Laws § 777.33(1)(e).

SJ testified that it hurt when Petitioner penetrated her, *see* 1/29/13 Trial Tr. (ECF No. 17-10, PageID. 678), and the pediatrician, Dr. Lisa Markman, testified that SJ's hymenal tissue was unusually thin in one spot.  *See* 1/30/13 Trial Tr. (ECF

No. 17-12, PageID.899-901).   The Michigan Court of Appeals concluded from a preponderance of the evidence that the complainant suffered from a bodily injury due to Petitioner's conduct and that offense variable 3 was properly scored at five points.  *See Mix*, 2014 WL 3512960, at *4.  Even if the state courts erred, Petitioner has not alleged that five fewer points would have made a difference in the sentencing guidelines.

Next, Petitioner alleges that offense variable 10 was improperly scored at fifteen points.  "Offense variable 10 is exploitation of a vulnerable victim."  Mich. Comp. Laws § 777.40(1).  Fifteen points is the appropriate score when "[p]redatory conduct was involved."  Mich. Comp. Laws § 777.40(1)(a).

The Michigan Court of Appeals determined from the evidence that Petitioner was an authority figure to the complainant and that he "groomed" her by beginning with inappropriate touching and progressing to more egregious sexual acts involving penetration.  *See Mix,* 2014 WL 3512960, at *4.  The Court of Appeals concluded that Petitioner's actions demonstrated an intent to victimize the complainant and constituted predatory conduct, warranting a score of fifteen points.  *Id*.  This was a reasonable conclusion based on the facts in the case.

Finally, Petitioner alleges that offense variable 19 was incorrectly scored at ten points.   Offense variable 19 is, among other things "interference with the administration of justice."  Mich. Comp. Laws §777.49.  Ten points is proper when

the offender "interfered with or attempted to interfere with the administration of justice[.]" Mich. Comp. Laws § 777.49(c).

SJ testified that Petitioner told her their sexual activity was their "little secret." *See* 1/29/13 Trial Tr. (ECF No. 17-10, PageID.676). The Court of Appeals opined that this comment "was an affirmative act to prevent investigation and prosecution of his crimes," and, therefore, it constituted interference with the administration of justice, justifying a score of ten points. *See Mix,* 2014 WL 3512960, at *5. This Court agrees.

For all the reasons given by the Michigan Court of Appeals, Petitioner was not sentenced on misinformation of constitutional magnitude or on materially false information that he had no opportunity to correct through counsel. Accordingly, his right to due process was not violated, and he is not entitled to relief on his sentencing claims.

## D. Additional Claims about Trial Counsel

Petitioner contends that his trial attorney was ineffective for failing to challenge some jurors for cause, object to the trial court's closure of the courtroom, and call key defense witnesses. Petitioner raised this claim in his *pro se* supplemental brief on direct appeal. The Michigan Court of Appeals found no merit in the claims. To prevail on his claim here, Petitioner must show his attorney's

performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

### 1. Not Excusing Jurors for Cause

Petitioner alleges that defense counsel should have moved to excuse seven jurors for cause during the *voir dire* proceeding because all seven of the jurors admitted that they had predetermined opinions of his guilt. Petitioner also alleges that the jurors' assertions -- that were able to set aside their opinions and weigh the case on the evidence -- were not credible. The jurors in question are: Mary Rose; Harry Snook, Dawn Dallas, Vanessa Heard, John Palaszek, Gerald Babcock, and Jimmy Seay.

The record shows that the trial court excused Ms. Rose, *see* 1/29/13 Trial Tr. (ECF No. 17-11, PageID.754-755), and Mr. Snook, *see id.* at PageID.791, for cause, and defense counsel used peremptory challenges to excuse Ms. Dallas, *see id*. at PageID.774, and Ms. Heard, *see id*. at PageID.787.   As for the remaining three jurors, Mr. Palaszek stated that he knew several law-enforcement officers, but that his relationships with the officers would not impact his ability to listen to a police officer's testimony and that he could weigh their testimony like any other witness. *See id*. at PageID.787-788.  Although Palaszek also stated that his ex-wife had been held at knife point and sexually assaulted "quite a few years ago," he assured the

trial court that there was no reason why he could not be a fair and impartial juror. *See id*. at PageID.788.

Mr. Babcock was a retired employee for Consumers Energy who had no prior criminal convictions or charges. He stated that he did not know the trial attorneys or any of the proposed witnesses, that there was no reason why he could not be fair and impartial, and that there was nothing to bring to the court's attention based on the questions that were asked. Although he did say that he knew the trial judge, it appears that he was referring to his acquaintance with the judge as a prospective juror. *See id.* at PageID.802-804.

Mr. Seay was a corrections officer. He stated that he might have preconceived notions favoring the prosecution, but he also stated that he could follow the judge's instructions, presume Petitioner was innocent, follow the law, and listen to the testimony and evidence. *See id*. at PageID.811-813. Defense counsel had no questions for Mr. Seay, and he expressed satisfaction with the jury immediately after the prosecutor questioned Seay.

Although it is not clear why defense counsel did not move to excuse Mr. Seay for cause, "[c]ounsel's actions during *voir dire* are presumed to be matters of trial strategy." *Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001). To prevail on a claim about defense counsel's failure to challenge a potential juror, a habeas petitioner must show that the juror was actually biased against him. *Id*.

Petitioner has failed to show that jurors Seay, Babcock, and Palaszek were biased against him.  Therefore, defense counsel was not ineffective for moving to excuse those three jurors for cause, and the state appellate court's decision that defense counsel was not ineffective during jury selection is objectively reasonable. Petitioner has no right to relief on his claim.

## 2.  Failing to Object to the Closure of the Courtroom

Petitioner claims that defense counsel should have objected to the closing of the courtroom during SJ's trial testimony.  He states that plain error occurred because (a) there is no indication that the court articulated any overriding interests advanced by the closure, (b) reasonable alternatives were not considered, and (c) the closure of the courtroom violated his constitutional rights.

The Michigan Court of Appeals agreed with Petitioner that defense counsel's failure to object was objectively unreasonable because the trial court failed to consider the relevant interests before closing the courtroom.  The Court of Appeals, nevertheless, denied relief because Petitioner had not shown that the victim's testimony would have changed in a way that undermined confidence in the outcome of the trial if counsel had objected.

The record demonstrates that the prosecution successfully moved before trial to close the courtroom during SJ's testimony.  *See* 1/18/13 Pretrial Tr. (ECF No. 17-8, PageID.561-562).  Even if Petitioner's trial attorney was remiss for not seeking

reconsideration of the court's prior ruling, the Supreme Court's "opinions teach that courtroom closure is to be avoided, but that there are some circumstances when it is justified." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1909 (2017).

"So although the public-trial right is structural, it is subject to exceptions." *Id.* "The fact that the public-trial right is subject to these exceptions suggests that not every public-trial violation results in fundamental unfairness." *Id.* "[W]hen a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* prejudice is not shown automatically. Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or . . . to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair." *Id.* at 1911.

The courtroom was closed to the public only for SJ's testimony. The record is silent as to whether any individuals who wanted to remain in the courtroom were excluded. But SJ's testimony was recorded and transcribed, and the record does not indicate any basis for concern about the closed courtroom.

Petitioner has failed to show that the partial closure of the courtroom deprived him of a fair trial. And given the strength of the evidence against him, Petitioner also has not shown a reasonable probability of a different outcome if counsel had objected to the closure at trial. In the words of the Eleventh Circuit,

> [i]f counsel had objected in a timely fashion and had persuaded the trial judge not to partially close the courtroom, there is no reason to believe

that would have changed the victim's testimony in a way which would have created a reasonable doubt in the jury's mind. The victim could just as well have been a more sympathetic or credible witness if forced to testify publicly.

*Purvis v. Crosby*, 451 F.3d 734, 738–39 (11th Cir. 2006).

Trial counsel was not ineffective, and the state court's rejection of Petitioner's claim was not unreasonable. Petitioner has no right to relief on his claim.

### 3.  Failure to Call Defense Witnesses

Petitioner alleges that he informed his trial attorney about potential witnesses and that his attorney was constitutionally ineffective for failing to produce the witnesses at trial. The Michigan Court of Appeals rejected this claim because Petitioner had not shown that the witnesses would have testified favorably at trial and that the failure to interview the witnesses would have benefited Petitioner.

It appears that all or most of the witnesses that Petitioner contends trial counsel should have called as witnesses were people who testified twenty years earlier at the 1993 trial involving Petitioner's half-sisters. With one possible exception, Petitioner has not shown that the proposed defense witnesses were willing and able to testify at Petitioner's 2013 trial.[3]

---

[3] Janice Mix wrote in a notarized statement dated October 30, 2013, that she testified in Petitioner's behalf in 1993. The Court understands Ms. Mix's written statement to say that, if she had been called to testify at Petitioner's 2013 trial, she would have testified that Petitioner always had someone living with him during the time that he was accused of criminal sexual conduct against other individuals and that anyone living with him would have heard everything going on in the home. Ms. Mix also

Even if the witnesses had testified at the 2013 trial, at most, they might have been able to undermine HM and ST's testimony. But the key question was whether SJ was credible, and her testimony was corroborated by the pediatrician's testimony. Thus, there is not a reasonable probability that calling witnesses to rebut the testimony of HM and ST would have resulted in a different outcome in the case. Defense counsel was not ineffective for failing to call the witnesses, and the state appellate court's rejection of Petitioner's claim was not unreasonable.

### IV. The Claims First Raised
### in the Michigan Supreme Court on Direct Appeal

Petitioner first raised his next two claims in the Michigan Supreme Court. Accordingly, Respondent argues that the claims are procedurally defaulted.

A federal court may bypass a procedural-default issue in the interest of judicial economy when the petitioner's claim can be resolved against him on the merits and the procedural-default issue involves complicated issues of state law. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *see also Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.").

Petitioner's fifth and sixth claims do not warrant habeas relief, and the Court has found it more efficient to address the merits of those claims than to analyze

---

states that SJ has always hated Petitioner and blames Petitioner for her birth father's death. *See* Pet. (ECF No. 1, PageID.49).

whether the claims are procedurally defaulted. Accordingly, the Court bypasses the procedural default analysis and proceeds directly to the merits.

## A. Fraud and Deception

Petitioner alleges that his convictions and sentences are invalid because they are based on fraud and deception. This claim is based on (1) the prosecutor's decision to charge Petitioner with additional crimes after Petitioner's preliminary examination on June 8, 2011, and (2) the trial court's remand to the state district court for a preliminary examination on the new charges. Petitioner contends that the transfer of jurisdiction from the district court to the circuit court following the second preliminary examination was fraudulent and improper because the parties waived the balance of the first preliminary examination after it was determined that he would stand trial on a charge of second-degree CSC.

Petitioner's claim is based on state law and a conclusory allegation about the denial of due process. Federal habeas courts generally do not review alleged violations of state law. *Bowling v. Parker*, 344 F.3d 487, 503 n.5 (6th Cir. 2003). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991). Petitioner cannot create a constitutional claim by making a conclusory allegation that the prosecution and trial court deprived him of due process. *See Baston v. Bagley*, 282 F. Supp. 2d 655, 673 (N.D. Ohio 2003);

*Grizzell v. Tennessee*, 601 F. Supp. 230, 232 (M.D. Tenn. 1984). Accordingly, the Court declines to grant relief on Petitioner's claim.

## B.   The State Circuit Court's Pretrial Decision to Remand the Case

Petitioner's sixth claim is related to his fifth claim in that it challenges the trial court's remand of his case to the state district court for a second preliminary examination. Petitioner contends that the remand violated his Sixth Amendment right to an attorney who could consult with him, investigate, and prepare the necessary pleadings.

The record shows that Petitioner was represented by counsel at a hearing on the new charges in state district court on December 14, 2011, *see* 12/14/11 Preliminary Examination Tr., Volume 2 (ECF No. 17-3), and at another hearing on the following day, *see* 12/15/11 Preliminary Examination Tr., Vol. 3 (ECF No. 17-4). At the hearing on December 14, 2011, defense counsel opposed the remand and argued that the prosecution had an opportunity to add charges at the initial preliminary examination and that he had not been given proper notice of the new charges. *See* 12/14/11 Preliminary Examination Tr., Vol. 2 (ECF No. 17-3, PageID.472).

Petitioner also was represented by counsel at the second preliminary examination where defense counsel had an opportunity to cross-examine SJ. *See* 10/1/12 Preliminary Examination (ECF No. 17-6). Petitioner has failed to show that

his prior attorneys were ineffective and that the trial court violated his Sixth Amendment rights by remanding his case for a second preliminary examination on new charges arising from SJ's allegations. The Court, therefore, declines to grant relief on Petitioner's sixth claim.

### V.  The Additional Claims Raised in the Amended Petition

Petitioner raises twelve more claims in his amended petition. The state trial court rejected many of the claims during the post-appeal proceedings because Petitioner failed to raise the claims on direct appeal. *See People v. Mix*, No. 11-4297-FC, Order Following Pro Per Motions (Jackson Cty. Cir. Ct. July 12, 2017) (ECF No. 17-22).  Respondent, however, has not argued that the twelve claims are procedurally defaulted, and the Court is not required to raise the issue *sua sponte,* for "in the habeas context, a procedural default . . . is not a jurisdictional matter." *Trest*, 522 U.S. at 89.  Further, to the extent that Petitioner may not have exhausted state remedies for some claims, the exhaustion rule also is not jurisdictional. *Castille v. Peoples*, 489 U.S. 346, 349 (1989).  Accordingly, the Court proceeds to analyze Petitioner's additional twelve claims on the merits, regardless of whether they are unexhausted or are procedurally defaulted.

## A.  The Plea-Bargaining Phase

Petitioner asserts that trial counsel was ineffective because the attorney misadvised him of the real consequences of the plea bargain.  More specifically, Petitioner states that it was error to advise him that he would forfeit his right to appeal if pleaded guilty.

"]T]here is no appeal of right under Michigan law for a conviction that arises out of a guilty plea." *Fugate v. Booker*, 321 F. Supp. 2d 857, 858 (E.D. Mich. 2004); *see also* Mich. Ct. R. 7.203(A)(1)(b).  Thus, defense counsel's alleged advice that Petitioner would forfeit an appeal of right by pleading guilty was accurate and not ineffective assistance.

Petitioner also implies that he would have accepted the plea bargain if he had known that the prosecution was going to add charges.   But he admits that the record is not sufficiently developed on this issue, and absent evidence that he would have taken the deal *at the time*, his claim fails.  *See Smith v. Cook*, 956 F.3d 377, 395 (6th Cir. 2020) (stating that "[w]e do not doubt that [the petitioner] wishes, in hindsight, he had taken the [plea] deal . . . . [b]ut absent evidence that [he] would have taken the deal *at the time*, he has not shown prejudice" from counsel's allegedly deficient performance) (emphasis in original), *cert. denied*, 141 S. Ct. 1111 (2021).

## B.  The Trial Court

Petitioner alleges that the trial court violated his right to due process by failing to properly resolve three pretrial motions regarding a support person for the complainant, closure of the courtroom, and the use of "bad acts" evidence.  This contention is belied by the record.  The trial court indicated before trial that it had already ruled on the closed courtroom, the prior acts evidence, the witness screen, and a support person.  *See* 1/18/213 Pretrial Hr'g Tr. (ECF No. 17-8, PageID.561-562); 1/28/13 Trial Tr. (ECF No. 17-9, PageID.566).  Thus, even if there was no written order on the motions, Petitioner was on notice of the court's rulings, and he has no right to relief on his claim.

## C.  Trial and Appellate Counsel

Petitioner alleges next that his trial and appellate attorneys were ineffective and violated his right to a speedy trial by failing to adequately challenge the vindictive amendment of the charges after he declined to accept the plea bargain and after both parties waived the balance of the preliminary examination.  The record, however, does not support Petitioner's assertion that the prosecutor vindictively amended the charges.  Instead, the additional charges were based on new information that SJ provided during the preparation for trial.  *See* 10/1/12 Preliminary Examination Tr. (ECF No. 17-6, PageID.507).  Petitioner's claim, therefore, lacks merit.

### D.  The Trial Court's Jurisdiction

Petitioner alleges next that the trial court lacked jurisdiction over the three counts of first-degree CSC because there was no valid complaint or verifiable testimony at the preliminary examination to support the bind-over to circuit court. The trial court disagreed and stated in one of its post-appeal orders that there was no jurisdictional defect because the victim's testimony at the second preliminary examination resulted in the added first-degree CSC counts. *See People v. Mix*, No. 11-4297-FC, Order Following Pro Per Motions (Jackson Cty. Cir. Ct. July 12, 2017); (ECF No. 17-22, PageID.1619).

Whether the state court was "vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Willis v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976).   And the "state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).  Petitioner, therefore, is not entitled to relief on his claim.

### E.  Failure to Request State Funds, etc.

Petitioner claims that trial counsel was ineffective for failing to request state funds and a consultation or to present defense experts in pediatrics, psychology, and child sexual abuse to counter the testimony of the prosecution's expert witness.  The prosecution's expert witness, however, testified generally about young victims of

child abuse, and defense counsel chose a strategy that did not require an expert.  He

elicited the expert witness's testimony that allegations can be reinforced.  Because

this testimony supported the defense theory-- that SJ was influenced by the people

to whom she disclosed the alleged abuse -- defense counsel was not ineffective for

failing to consult an expert or seek state funds to hire an expert witness.

## F.  The Trial Court's Comment

Petitioner contends that the trial court violated his rights to due process,

confrontation, and a fair trial when the court declared that Dr. Markman had testified

that SJ's hymen was torn.  *See* 1/30/13 Trial Tr. (ECF No. 17-12, PageID.901).

Petitioner maintains that this comment was not a fair comment on the evidence and

that his attorneys were ineffective for not objecting at trial or raising the issue on

appeal.

The court's comment was a misstatement of the evidence because Dr.

Markman did not testify that the complainant's hymen was torn.  Instead, she

testified that a portion of the complainant's hymen was thinner than what she would

have expected and thinner than other areas on the rim of the hymen.  *See id*. at

PageID.899, 901.

Nevertheless, the court subsequently instructed the jury that its comments,

questions, and summary of the evidence were not evidence.  *See id*. at PageID.1022.

The court also explained that when it did make a comment or give an instruction, it

was not trying to influence the jurors' vote or express a personal opinion about the case and that the jurors were the only judges of the facts. *See id*. at PageID.1023. In light of these instructions, the court's misstatement of the testimony was harmless, and Petitioner's attorneys were not ineffective for failing to raise the issue at trial or on appeal.

## G. Double Jeopardy

Next, Petitioner alleges that his convictions for second-degree CSC and assault with intent to commit penetration violate double jeopardy principles under the *Blockburger* test because he was convicted of three counts of first-degree CSC, which is a greater offense. He argues that the charges stemmed from the same events and have the same elements and that his trial and appellate attorneys were ineffective for not raising the double jeopardy issue.

Among other things, "[t]he Double Jeopardy Clause 'protects against . . . multiple punishments for the same offense.' " *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

> The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):
>
> > "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each

> provision requires proof of an additional fact which the
> other does not. . . . "

> This test emphasizes the elements of the two crimes. "If each requires
> proof of a fact that the other does not, the Blockburger test is satisfied,
> notwithstanding a substantial overlap in the proof offered to establish
> the crimes. . . . " *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95
> S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 616 (1975).

*Brown*, 432 U.S. at 166.

"CSC I and II are separate offenses since CSC I requires proof of penetration,

while CSC II requires proof of an intent to seek sexual arousal or gratification, and

neither element is common to both degrees." *Palazzolo v. Gorcyca*, 244 F.3d 512,

519 n.6 (6th Cir. 2001). Thus, the Double Jeopardy Clause was not violated by

Petitioner's convictions for first-degree CSC and second-degree CSC. As for the

assault charge,

> "[t]he double jeopardy prohibition does *not* operate to bar the
> prosecution of two dissimilar offenses that occur at different
> times." *People v. Richard Johnson,* 94 Mich. App. 388, 391, 288
> N.W.2d 436 (1979). See also *People v. Noth,* 33 Mich. App. 18; 189
> N.W.2d 779 (1971). There is no violation based on double prosecution
> if one crime is complete before the other takes place, even if the
> offenses share common elements or one constitutes a lesser offense of
> the other. *People v. Johnson, supra; People v. Jones,* 75 Mich. App.
> 261, 270–271, 254 N.W.2d 863 (1972).

*People v. Swinford*, 150 Mich. App. 507, 515; 389 N.W.2d 462, 465 (1986)

(emphasis in original).

Although SJ was unable to provide specific dates for the alleged abuse, her

use of phrases like "one time," "another time," and "the same thing happened later,"

indicate that she was describing offenses that occurred at different times. Therefore, the *Blockburger* test was not violated, and Petitioner's attorneys were not ineffective for failing to raise the issue in the trial court or on appeal.

## H. Appellate Counsel

Petitioner alleges that his appellate attorney was ineffective for failing to raise the public-trial issue as structural error. "[A] violation of the right to a public trial is a structural error," *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017), but "it is subject to exceptions," *id.* at 1909, and not every public-trial violation leads to a fundamentally unfair trial. *Id*. at 1911.

Furthermore, Petitioner raised the public-trial issue in his *pro se* supplemental brief on appeal. Because he could have argued in his own brief that the closure of the courtroom during SJ's testimony was a structural error, he has failed to show that appellate counsel's performance prejudiced him.

## I. Judicial Found Facts

Petitioner states that his sentence is invalid under *People v. Lockridge,* 498 Mich. 358; 870 N.W.2d 502 (2015). The Michigan Supreme Court concluded in *Lockridge* "that the rule from *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), as extended by *Alleyne v. United States,* 570 U.S. —, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), applies to Michigan's sentencing guidelines and renders them constitutionally deficient." *Id*., 498 Mich. at 364; 870 N.W.2d at

506.    That deficiency, the Court explained, was "the extent to which the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the "mandatory minimum" sentence under *Alleyne.*"  *Id.* (emphasis in original).

Petitioner has not alleged any facts to support his *Lockridge* claim.  The Court, therefore, declines to grant relief on his claim.

## J.  Failure to Present a Defense and Advise Petitioner

### 1.  The Alleged Failure to Present a Defense

Petitioner alleges next that his attorney failed to present a defense.  But there was a defense.  As noted above, the defense was that:  Petitioner did not commit the crimes; the allegations arose from a story which the complainant told her friend; Petitioner was being tried on HM and ST's allegations; and the prosecutor had not proved its case beyond a reasonable doubt.   The fact that defense counsel's strategy did not persuade the jury to acquit Petitioner of the charges does not mean that counsel was ineffective, so long as counsel's decisions were part of a reasonable trial strategy.  *Smith*, 956 F.3d at 393.

Given the strength of the evidence against Petitioner, counsel's strategy was reasonable.   In fact, "[w]hen defense counsel does not have a solid case, the best

strategy can be to say that there is too much doubt about the State's theory for a jury to convict." *Richter*, 562 U.S. at 111.

### 2. The Alleged Failure to Advise Petitioner

Petitioner also alleges that his attorney failed to advise him of the right to testify in his own defense.   "The right of a defendant to testify at trial is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the defendant." *United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000) (citing *Rock v. Arkansas*, 483 U.S. 44, 52, 53 n. 10 (1987); *Pelzer v. United States*, 105 F.3d 659 (table), 1997 WL 12125, at *2 (6th Cir. Jan. 13, 1997); and *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)). Although the record in this case does not reflect a waiver of the right to testify,

> a defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. *Pelzer*, 1997 WL 12125 at *2. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct.   Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Joelson*, 7 F.3d at 177.

*Webber*, 208 F.3d at 551.

Petitioner claims that he would have testified and refuted the testimony, but there is no evidence in the record that he wanted to testify.  The Court presumes from his silence that he waived the right to testify.

## K.  Failure to Investigate

Petitioner asserts that he was denied his constitutional right to the effective assistance of counsel because one of his former attorneys failed to do an adequate investigation, failed to file a timely motion to quash the criminal information with the added charges, and failed to file an interlocutory appeal to preserve the motion to quash.

The record indicates that the attorney in question was Petitioner's second or third appointed attorney. He was knowledgeable about the facts of the case, and he did oppose the remand.  He argued at a hearing about the remand that the prosecution should not be permitted to add charges and that the prosecution had not provided proper notice of the new charges.  *See* 12/14/11 Preliminary Examination Tr., Vol. 2 (ECF No. 17-3, PageID.472).  Counsel could have concluded that an interlocutory appeal would be unsuccessful and merely delay the case.  He was opposed to any adjournments or any further delays in the case.  *See id*. at PageID.477.

"There are countless ways to provide effective assistance in any given case," *Strickland*, 466 U.S. at 689, and trial counsel's failure to file an interlocutory appeal was reasonable.  Petitioner, therefore, is not entitled to relief on his claim.

## L.  Appellate Counsel

Petitioner's final claim is that he was denied effective assistance of appellate counsel.  He contends that his appellate attorney did not adequately investigate the

case and should have raised an issue about trial counsel's failure to file a motion to quash the amended charges and file an interlocutory appeal.

The proper standard for evaluating a claim about appellate counsel is the standard enunciated in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). An appellate attorney is not required to raise every non-frivolous claim requested by his or her client if the attorney decides, as a matter of professional judgment, not to raise the claim. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Instead, an appellate attorney is constitutionally ineffective if (1) the attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability that the petitioner would have prevailed on appeal if his attorney had raised the issues. *Robbins,* 528 U.S. at 285 (citing *Strickland,* 466 U.S. at 687-91, 694).

Petitioner's underlying claim about how trial counsel handled the prosecution's decision to add charges lacks merit for the reasons given in the Court's discussion of Petitioner's previous claim. Furthermore, Petitioner has raised the same issues that appellate counsel raised in the appeal of right, and he could have raised his additional claims in the supplemental brief that he filed on direct appeal. He has failed to show that his appellate attorney acted unreasonably in failing to raise all his habeas claims on appeal and that he would have prevailed on direct appeal if his attorney had raised the issues. Therefore, appellate counsel's

performance was not deficient or prejudicial, and Petitioner is not entitled to relief on his claim about appellate counsel.

## VI.  Conclusion

The state appellate court's decision on Petitioner's first four claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  The remaining issues lack merit for the reasons given above.  Accordingly, the Court denies the amended petition for a writ of habeas corpus.

The Court declines to grant a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  In addition, reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the claims deserve encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  However, because Petitioner was granted permission to proceed *in forma pauperis* in this case, he may proceed *in forma pauperis* on appeal without further authorization from this Court.  Fed. R. App. P. 24(a)(3).


Dated:  September 29, 2021                    s/Sean F. Cox
                                              Sean F. Cox
                                              U. S. District Judge